UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRAVIS D. HAILEY,

                        Plaintiff,                  Civil Action No. 18-12651
         v.                                  Honorable Gershwin A. Drain
                                        Magistrate Judge David R. Grand

CITY OF DETROIT, *et al.*,

                        Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [27] AND TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [29]

In February 2017, Plaintiff Travis Hailey ("Hailey") was arrested by two City of Detroit Police Officers, Christopher Bush and Stephen Kue (the "Officers"). Following his arrest, Hailey was charged with state offenses related to possession of a firearm, but those charges were dismissed. (ECF No. 29, PageID.135). Hailey then commenced this action against the City of Detroit and the Officers[1] (collectively, "Defendants") for Fourth Amendment violations and

---

[1] Hailey asserts that he is suing the Officers for monetary damages in their "individual and official capacities." (ECF No. 1, PageID.1). The official capacity claims are improper and should be dismissed. The United States Supreme Court has long held that, unless the state has waived its immunity and consented to suit or Congress has abrogated that immunity, the Eleventh Amendment bars suits against a state in federal court. *See Hans v. Louisiana*, 134 U.S. 1, 10 (1890); *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996) (reaffirming *Hans*). This immunity is extended to state officials sued in their official capacity for monetary damages since the action, in essence, is one for recovery of money from the state. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Additionally, § 1983 does not abrogate Eleventh Amendment immunity. *See Quern v. Jordan*, 440 U.S. 332, 343 (1979). Thus, a § 1983 claim for monetary relief against a state official sued in her official capacity is barred by the Eleventh Amendment. *See Edelman*, 415 U.S. at 663; *see also Parker v. Spangler*, No. 14-11067, 2015 WL 4756509, at *8 (E.D. Mich. Aug. 11, 2015) ("the Eleventh Amendment bars suits against university police officers in their official capacities.").

municipal liability, pursuant to 42 U.S.C. 1983, civil conspiracy, and kidnapping.  (ECF No. 1).

Discovery closed on May 15, 2019, and Defendants thereafter timely filed a motion for summary judgment on all of Hailey's claims. (ECF Nos. 17, 27).  Hailey filed a response to Defendants' motion, as well as a separate cross-motion for summary judgment.  (ECF Nos. 29, 31).  Defendants neither responded to Hailey's cross-motion for summary judgment nor filed a reply in support of their own summary judgment motion.

## I.      RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment (**ECF No. 27**) be **GRANTED IN PART** and **DENIED IN PART**, and that Hailey's Motion for Summary Judgment (**ECF No. 29**) be **DENIED**.

## II.     REPORT

### A.      Factual Background

About the only undisputed fact in this case is that on the evening of February 22, 2017, Officers Kue and Bush arrested Hailey on Lindsay Street in Detroit.  (ECF No. 31, PageID.240-41).  The details of the interaction between Hailey and the Officers are disputed, though the exact contours of the dispute are somewhat unclear due to the unorthodox manner in which the Defendants briefed their summary judgment motion.  Defendants provided a "Statement of Material Facts" that is eight sentences long (seven if you omit the stray non-sensical sentence shown in bold below) and fails to cite to any evidence whatsoever:

> Defendants Stephen Kue and Christopher Bush…were on routine patrol when they observed a 2000 Black Mercedes Benz reverse into the driveway of a boarded up dwelling at 18676 Lindsey [sic]… The officers shined their lights into the vehicle and observed [Hailey] throw an object toward the backseat, exit the vehicle and begin walking away.  The officers exited their vehicle and immediately detained [Hailey].  **Dodge Durango that had taken place approximately 20-45 minutes earlier.**  As Officer Kue observed the gun in the backseat Officer Bush yelled that [Hailey] was

fleeing on foot.  The Officers gave chase and eventually detained [Hailey] in the rear of 18668 Lindsey [sic].  Officer Kue recovered a black revolver loaded with 5 live rounds from the vehicle.[2]

(ECF No. 27, PageID.114) (emphasis added).[3]

The following is Hailey's version of the facts, much of which is derived from the state court pretrial transcripts he attached to his summary judgment briefs.[4]  (ECF Nos. 29, 31).  Hailey testified that on February 22, 2017, he was standing in the yard of his house at 18668 Lindsay Street, smoking a cigarette, when the Officers drove by.  (ECF No. 29, PageID.179).  The Officers doubled back and shined a light in Hailey's face.  (*Id.*).  Then, both Officers exited the car with their guns drawn on Hailey.  (*Id.*, PageID.180).  Hailey asked what was going on, and one of the

---

[2] Defendants' brief violates Fed. R. Civ. P. 56(c)(1)(A), which provides that a party moving for summary judgment "must support [its] assertion[s] by… citing to particular parts of materials in the record[.]"  At least as to issues that are not purely legal in nature, this alone is a legitimate basis for denying Defendants' motion for summary judgment.

[3] Defendants attached one exhibit to their summary judgment motion – an unauthenticated record that appears to show that, at the time in question, the Lindsay property was owned by the Detroit Land Bank.  (ECF No. 27-1).  The document says nothing about a possessory interest Hailey may have had in the property, and the parties even dispute the exact location in question; Defendants refer to 18676 Lindsay, whereas Hailey refers to 18668 Lindsay.  Moreover, Defendants contend that the property's ownership was determined during "investigation *at the scene*," but they cite to no evidence corroborating that contention.  (ECF No. 27, PageID.124) (emphasis added).

[4] Hailey explained in his response brief, "The material fact [sic] of this civil action lies within the transcripts . . .," and he provided citations to the salient testimony.  (ECF No. 31, PageID.223-225).  While the factual presentation is unorthodox, it made the factual questions in this case easy enough to identify.  For instance, the Circuit Court judge presiding over the evidentiary hearing that resulted in the dismissal of the criminal charges against Hailey explained, ". . . now we're before the Court on an evidentiary hearing where we have officers testifying to one set of facts. Mr. Hailey's testifying to an opposite set of facts, which basically contradict each other. . . . there's testimony that Mr. Hailey may have been sitting in his car, parked in the driveway [i.e., the Officers' version]. . . . Or standing on his porch [i.e., Hailey's version].  Which means he was not engaged in any unlawful activity."  (ECF No. 31, PageID.265; *see also*, ECF No. 29, PageID.197 ("But that's the testimony of the officer at the exam and then Mr. Hailey's testimony is different, it creates a question of fact . . .")).

Officers told him to "just stand there."  (*Id*.).  Officer Kue frisked Hailey, finding no weapons.[5]  (*Id.*, PageID.164; ECF No. 1, PageID.3-4).  After the frisk, Hailey asked if he was free to go and Officer Kue said no.  (ECF No. 29, PageID.180).  Officer Kue then searched around Hailey's yard and looked into the car parked in the adjacent driveway.  (*Id*.).  Using keys he had removed from Hailey's pocket, Officer Kue unlocked the car and searched it.  (*Id*., PageID.185).  Hailey says nothing was found in the car, and that the Officers never showed him anything.  (*Id.*, PageID.186).  Officer Bush then cuffed Hailey.  (ECF No. 31, PageID.247).  Hailey was told that he was being arrested because of a traffic ticket.  (ECF No. 29, PageID.186).

After the arrest, Hailey was charged in Michigan state court with three offenses: carrying a concealed weapon; felony firearm; and possession of a weapon.  (*Id.*, PageID.135).  The state court judge ordered the City of Detroit to produce scout car video of the incident in question.  (*Id.*, PageID.156; ECF No. 31, PageID.238).  But the video was not turned over to Hailey and was not preserved.  (ECF No. 29, PageID.209).  When the court asked the officer-in-charge about the lost video, she testified that she did not think the Detroit Police Department had a policy to destroy videos when a case is still pending.  (ECF No. 31, PageID.243).  She continued, "it's not that the Detroit Police destroy it.  It's just the system automatically gets rid of it" unless a preservation request is received within 90 days.  (*Id*.)

---

[5] In his Complaint, Hailey describes the involved officers as "John Doe Officer 1" and "John Doe Officer 2."  (*See, e.g.,* ECF No. 1, PageID.3) ("John Doe Officer 1, which was the driver… walked onto [Hailey's lawn] to search him. John Doe Officer 2 then cuffed Plaintiff placing him in their scout car.").  Hailey's testimony at pre-trial hearings muddles the distinction between the Officers. However, during the state criminal proceedings, Officer Kue testified that he was the driver of the car and that he frisked Hailey, which matches Hailey's allegations in the complaint regarding "John Doe Officer 1."  (ECF No. 29, PageID.150, 164).  Therefore, for the purposes of this motion, the Court understands John Doe Officer 1 to be Officer Kue and John Doe Officer 2 to be Officer Bush.

Finding that "there [was] no remedy [for the destroyed video] or instruction that could be given to produce a just verdict[,]" the state court judge dismissed the charges against Hailey. (ECF No. 29, PageID.209-210). Hailey alleges that although the criminal charges against him were dismissed, Officer Kue testified to the Parole Board about the events in question, which resulted in Hailey being ordered to serve 60 months' incarceration for a parole violation. (*Id.*, PageID.136; ECF No. 1, PageID.13). Hailey then initiated the instant action pursuant to 42 U.S.C. § 1983, against the City of Detroit and Officers Bush and Kue for (1) Fourth Amendment violations, including excessive force, unlawful search and seizure, and "unlawful arrest"; (2) civil conspiracy between the Officers to deprive Hailey of his civil rights; (3) a *Monell* claim for municipal liability against the City; and (4) "kidnapping" in violation of 18 U.S.C. § 1201. (ECF No. 1). The instant motions followed the close of discovery.

## B.     Standard of Review

Federal Rule of Civil Procedure 56 provides, "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). Because Hailey is a pro se litigant, his filings are liberally construed. *See Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that the Court holds pleadings of pro se litigants to less stringent

standards than formal pleadings drafted by lawyers)); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy liberal construction of their pleadings and filings).

### C.    Analysis

#### i.    *Constitutional Claims*

Section 1983 "prohibit[s] state employees from violating a person's constitutional rights." *Green v. City of Southfield*, 925 F.3d 281, 284 (6th Cir. 2019). As noted above, Hailey alleges that Officers Kue and Bush violated his Fourth Amendment rights by using excessive force, illegally seizing and searching him, and arresting him without probable cause. (ECF No. 1, PageID.6-8). The Officers assert that they are entitled to qualified immunity as to these claims. (ECF No. 23, PageID.15-24).

The doctrine of qualified immunity shields government officials "from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Webb v. United* States, 789 F.3d 647, 659 (6th Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity defense may be raised at any stage of the case. Where, as here, it is raised in a motion for summary judgment, courts must weave the summary judgment standard into each step of the qualified immunity analysis. *See Scott v. Harris*, 550 U.S. 372, 377-78 (2007). In qualified immunity cases, "this usually means adopting … the plaintiff's version of the facts." *Id.* at 378.

The qualified immunity analysis involves a two-step inquiry: (1) whether, viewing the record in the light most favorable to the plaintiff, a constitutional right was violated and (2) whether that right was "clearly established" at the time the violation occurred. *King v. United States*, 917 F.3d 409, 422 (6th Cir. 2019). A plaintiff must satisfy both of these prongs, but the court may take up the questions in either order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (*abrogating*

*in part Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Each defendant's liability "must be assessed individually based on his own actions."  *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). Applying these standards, the Court will analyze each alleged constitutional violation in turn.

        *1.    Constitutional Violations*

             *a. Excessive Force*

Hailey contends that Officers Kue and Bush used excessive force when they approached him with their guns drawn.  (ECF No. 1, PageID.7).  The Officers do not address this claim beyond broadly stating that "the actions of the Officers was [sic] objectionably [sic] reasonable."  (ECF No. 27, PageID.124).  This bare-bones argument lacks merit.

"[T]he right to be free from the excessive use of force is a clearly established Fourth Amendment right."  *King*, 917 F.3d at 429 (citing *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004)).  However, "[n]ot every push or shove, even if it may later seem unnecessary … violates the Fourth Amendment."  *Graham v. Connor*, 490 U.S. 386, 396 (1989). To determine whether an excessive-force violation has occurred, courts apply "the objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight."  *Vanderhoef v. Dixon*, 938 F.3d 271, 276 (6th Cir. 2019).  Determining whether the particular force used was excessive involves balancing "'the nature and quality of the intrusion on the individual's Fourth amendment interests' against the countervailing governmental interests at stake.'"  *Id.* (citing *Mueller v. Mena*, 544 U.S. 93, 108 (2005)).

The analysis of whether an officer's use of force was reasonable is guided by the following three factors: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the police officers or others; and (3) whether the suspect actively resisted

arrest or attempted to evade arrest by flight." *Vanderhoef*, 938 F.3d 276; *see also Binay*, 601 F.3d at 650. The reasonableness standard focuses on the specific moment in time the officer made his decision to use force and the information he had at the time. *See Bouggess v. Mattingly*, 482 F.3d 886, 889 (6th Cir. 2007).

According to Hailey, he was standing in his front yard, smoking, when the Officers drove by. (ECF No. 29, PageID.179). The Officers then pulled over and both immediately pointed their guns at Hailey.[6] (*Id.*, PageID.179-180). The Sixth Circuit has recognized that pointing a gun at an individual can constitute excessive force under the Fourth Amendment. *See, e.g.*, *Vanderhoef*, 938 F.3d at 276 (finding that pointing a gun at a plaintiff while giving orders violated the plaintiff's constitutional rights when he was unarmed, non-threatening, and not actively resisting the officer's authority.); *Binay*, 601 F.3d 650 (recognizing that pointing a gun at an individual can constitute excessive force under the Fourth Amendment, as can unreasonably detaining an individual at gunpoint). Based on Hailey's version of the facts, the three *Vanderhoef* factors are in his favor: he was not engaged in criminal activity; did not pose an immediate threat to the safety of the Officers or others; and did not resist the Officers or attempt to flee. At least on the present record there is a genuine question of fact as to whether the Officers' actions, in pointing their guns at Hailey, constituted excessive force in violation of Hailey's Fourth Amendment rights.

---

[6] Section 1983 claims require that liability be individually based on each defendant's own actions. *See Stahl v. Coshocton Cty.*, 754 F. App'x 335, 343 (6th Cir. 2018) ("In order to hold individuals liable in their individual capacities under § 1983, a plaintiff must show that each defendant was personally involved in the alleged constitutional deprivations. . . . Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior.") (internal citations and quotations omitted). *See also Binay*, 601 F.3d 650. Hailey alleges that Officer Kue and Officer Bush both pointed guns at him. (ECF No. 1, PageID.2; ECF No.29, PageID.180). Although the Court is discussing the allegations together, the analysis is based on each individual officer's own alleged act of pointing a gun.

*b. Seizure*

Hailey also asserts that the Officers seized him without probable cause, in violation of the Fourth Amendment.  (ECF No. 1, PageID.7).  The Officers, for their part, baldly assert that their actions "was [sic] objectionably [sic] reasonable" and that they "are entitled to good faith immunity."  (ECF No. 27, PageID.124).

A "seizure" occurs when government actors "by means of physical force or show of authority, … in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968).  "[A]n officer may seize an individual without offending the Fourth amendment if the officer has reasonable suspicion that criminal activity may be afoot." *Hoover v. Walsh*, 682 F.3d 481, 494 (6th Cir. 2012) (internal quotations omitted).  Reasonable suspicion is "a particularized and objective basis for suspecting the particular person ... of criminal activity based on specific and articulable facts." *Brown v. Lewis*, 779 F.3d 401, 412 (6th Cir. 2015) (citation and internal quotation marks omitted).

The Officers do not address if and when a seizure occurred.  And, despite recognizing that qualified immunity exists only where "***the undisputed facts and all permissible inferences favorable to the plaintiff*** show either (a) that it was objectively reasonable for the officer to believe that probable cause existed, or (b) that officers of reasonable competence could disagree as to whether probable cause existed," the Officers go on to analyze the issue only with respect to ***their own version*** of the facts.  (ECF No. 27, PageID.124) (emphasis added).  Specifically, they contend, without reference to any evidence, ". . . the Officers observed [Hailey] reverse his vehicle into the driveway of an apparent vacant dwelling.  They then observe [Hailey] toss an object into the backseat."  (*Id.*).

Yet, Hailey testified that Officers approached him with their guns drawn while he was standing in his front yard.  (ECF No. 29, PageID.179).  The Officers' contention that Lindsay Street is "an area of expected criminal activity" is not enough to support a reasonable, particularized suspicion that Hailey was committing a crime.  *See Brown v. Texas* 443 U.S. 47, 52 (1979).  Just as the state court did, this Court finds that there is a genuine issue of fact as to whether Officers Kue and Bush had probable cause to seize Hailey.  (*See, e.g.*, ECF No. 31, PageID.265; ECF No. 29, PageID.197).

Accordingly, viewing Hailey's version of the facts in the light most favorable to him, a reasonable jury could find that Hailey was unlawfully seized by both Officers, either when they approached him with their guns drawn, or when he was later physically restrained and arrested. *See United States v. Mendenhall*, 446 U.S. 544, 553 ("a person has been 'seized' within the meaning of the Fourth Amendment… if… a reasonable person would have believed that he was not free to leave.")

### c.      Search

Hailey seems to allege that Officer Kue's search of his person on the night in question violated his Fourth Amendment rights._Again, the Officers seek qualified immunity, though they do not specifically address Hailey's salient allegations.  (ECF No. 27, PageID.119-124).

Whether the frisk is constitutional depends on the validity of the initial stop.  *See Rolen v. City of Cleveland*, 657 F. App'x. 353, 363 (6th Cir. 2016).  Officers must have reasonable suspicion to conduct a close-proximity investigation *before* they are entitled to conduct a protective frisk. *See Adams v. Williams*, 407 U.S. 143, 146 (1972) ("So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to [a] protective purpose.").  To conduct a protective frisk of an

individual, an officer must believe, in addition to the requisite suspicion of criminal activity necessary for the stop, "'that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officers or others.'"  *Rolen*, 657 F. App'x. at 362 (quoting *Terry v*, 392 U.S. at 24).

Hailey does not allege, and nothing in the record suggests, that Officer Bush took part in searching him, the area around his house, or the car.  (*See* ECF Nos. 1, 29, 31).  Because Hailey does not allege that Officer Bush was personally involved in the searches, as required for personal liability under § 1983, Officer Bush is entitled to summary judgment as to Hailey's illegal search claim.  *See Binay*, 601 F.3d at 650.

However, Hailey alleges that Officer Kue illegally frisked him and searched the area around his house.  (ECF No. 1, PageID.6; ECF No. 29, PageID.47).  Officer Kue does not address Hailey's claim beyond the aforementioned broad assertion that the Officers' actions were "objectionably [sic] reasonable." (ECF No. 27, PageID.124).  As discussed above, however, Hailey's allegations raise an issue of fact as to whether Officers Kue and Bush were entitled to stop him.  Because Hailey raised a question of fact as to the propriety of the investigatory stop, the propriety of Officer Kue's protective frisk is necessarily also in question.  *See Adams v. Williams*, 407 U.S. 143, 146 (1972) ("[s]o long as [an] officer is entitled to make a forcible stop, *and* has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search[.]") (footnote omitted) (emphasis added); *see also, Rolen*, 657 F. App'x. at 363 ("Whether a *Terry* frisk is constitutional depends on the validity of the initial *Terry* stop.").

And, even if the underlying stop was proper, there would still be a genuine issue of fact as to the propriety of the frisk.  An officer may lawfully perform a patdown on an individual when he has reasonable suspicion that the individual is armed and dangerous.  *See Terry*, 392 U.S. at 21,

27.   Under Hailey's version of the facts, Officer Kue had no reason to suspect Hailey was armed or dangerous at the time of the frisk, as Hailey alleges he was simply standing in the front yard outside the home on Lindsay when the Officers approached him.  (ECF No. 1, PageID.3).  Indeed, in the state court criminal proceedings, Officer Kue testified that he did not believe Hailey had a gun on him when he patted him down.  (ECF No. 29, PageID.164).  Accordingly, Hailey has raised a genuine issue of material fact as to the lawfulness of the frisk, and Officer Kue is not entitled to summary judgment as to this claim.

### d.     Arrest

The Officers also argue that they are entitled to qualified immunity on Hailey's wrongful arrest claim.  "In order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause."  *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002).  Probable cause to arrest exists if "facts and circumstances within the officer's knowledge… are sufficient to warrant a prudent person … in believing… that the suspect has committed, is committing, or is about to commit an offense."  *Steiger v. Hahn*, 718 F. App'x 386, 390 (6th Cir. 2018) (citing *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).  Courts review this determination from "the perspective of a reasonable officer on the scene, rather than [one] with 20/20 vision of hindsight."  *Id*. (quoting *Klein v. Long*, 275 F.3d 544, 540 (6th Cir. 2001)).  "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible."  *Pritchard v. Hamilton Twp. Bd of Trustees*, 424 F. App'x 492, 505 (6th Cir. 2011) (quoting *Fridley*, 291 F.3d at 872).

The offenses for which Hailey was arrested are (1) carrying a concealed weapon; (2) felony firearm; (3) and possession of a weapon.[7]  In support of their argument, the Officers merely reiterate their unsupported version of the incident, along with the conclusory statement that "[t]he actions of the Officers was [sic] objectionably [sic] reasonable and there was probable cause for the arrest of [Hailey]."  (ECF No. 27, PageID.124).  But that version of events is hotly contested by Hailey, and his state court testimony raises an issue of fact as to whether there was probable cause for his arrest.  According to Hailey, the Officers approached him while he was standing in his yard. (ECF No. 29, PageID.188).  The Officers then searched his car, which did not produce a weapon, and then arrested him.  (ECF No. 29, PageID.186).  If the jury believes this version of the facts, the jury could find that the Officers arrested Hailey without probable cause.  Because the Court must construe the evidence in the light most favorable to Hailey, the Officers are not entitled to summary judgment on the unlawful arrest claim.  *See Scheffler v. Lee*, 752 F. App'x 239, 246 (6th Cir. 2018) ("These disputed facts go directly to whether Lee had probable cause to arrest Scheffler for alcohol intoxication.  At summary judgment, we credit Scheffler's version of events, resolving these factual disputes in his favor.").

### 2.   *Clearly Established*

The Court now turns to the issue of "whether the right[s in question were] clearly established ... in light of the specific context of the case."  *Scott*, 550 U.S. at 372.  Although the Supreme Court "do[es] not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate."  *White*

---

[7] The exact charges against Hailey are unclear.  Hailey states that he was charged with "CCW, felony firearm, [and] possession of weapons charges."  (ECF No. 29, PageID.135).  Defendants state that a warrant was issued against Hailey for "weapon possession by felon, carrying a concealed weapon, and weapon felony firearms."  (ECF No. 27, PageID.115).  Neither party describes or provides evidence of the statutes under which the charges were actually brought.

*v. Pauly*, 137 S. Ct. 548, 551 (2017) (alteration in original) (internal quotation marks omitted).  In examining "existing precedent," courts "look first to decisions of the Supreme Court, then to [Sixth Circuit] precedents, and then to decisions of other courts of appeal."  *Brown v. Chapman,* 814 F.3d 447, 461 (6th Cir. 2016).

The Officers do not address whether the rights they allegedly violated were clearly established. (ECF No. 27, PageID.123).  Instead, the Officers state broadly that "even if the interest asserted by [Hailey] was clearly of a type generally protected by federal law [the Officers are] entitled to immunity if it was not clear at the time of the acts 'that an exception did not permit those acts.'" (*Id*. (citing *Robison v. Via*, 821 F.2d 913, 920-21 (2nd Cir. 1987))).  The Officers go on to assert that although "an arrest without probable cause is a constitutional violation [] the arresting officer is entitled to qualified immunity if the undisputed facts and all permissible inferences favorable to the plaintiff show either (a) that it was objectively reasonable for the officer to believe that probable cause existed, or (b) that officers of reasonable competence could disagree as to whether probable cause existed."  (ECF No. 27, PageID.124).  The problem though, is that the Officers have not shown any salient *undisputed facts* supporting their argument.

### a.  Excessive Force

As of the date of the incident in question in this case, it was clearly established in the Sixth Circuit that a police officer's pointing a gun at an individual who is unarmed, non-threatening, and not actively resisting the officer's authority constitutes excessive force.  *See, e.g.*, *Vanderhoef*, 938 F.3d at 276; *Binay*, 601 F.3d 650.  As discussed above, Hailey at least has raised an issue of fact as to whether the Officers' actions amounted to excessive force, and the right to be free from excessive force was clearly established.  Thus, Officer Kue and Officer Bush are not entitled to qualified immunity as to Hailey's excessive force claim.

### b. Search & Seizure

As the Sixth Circuit observed, "[i]t has long been clearly established that an officer needs evidence of criminality or dangerousness before he may detain and [frisk] a law-abiding citizen." *Wilkerson v. City of Akron, Ohio*, 906 F.3d 477, 481 (6th Cir. 2018) (internal quotations omitted). And, merely being in a high-crime area late at night does not constitute such evidence. *See id.* In light of Hailey having established a question of fact about the propriety of the stop, search, and seizure in this case, qualified immunity is not appropriate as to these claims.

### c. Arrest

"The constitutional right to 'freedom from arrest in the absence of probable cause' is clearly established within our circuit." *Courtright v. City of Battle Creek*, 839 F.3d 513, 520 (6th Cir. 2016) (quoting *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015)); *Parsons v. City of Pontiac*, 533 F.3d 492, 504 (6th Cir. 2008) ("the law was therefore clearly established that arrests without probable cause violated the Constitution at the time of [the plaintiff's] arrest in 2004). Because Hailey has raised an issue of fact as to whether the Officers had probable cause to arrest him, and the salient constitutional right was clearly established, the Officers are not entitled to qualified immunity as to this claim.

In sum, with respect to Hailey's Fourth Amendment claims against Officers Kue and Bush, the Officers' summary judgment motion should be granted in part and denied in part. More specifically, the motion should be granted as to Hailey's illegal search claim against Officer Bush and as to Hailey's official capacity claims against the Officers, but the motion should otherwise be denied as to Hailey's Fourth Amendment claims.

ii.      **Civil Conspiracy**

Hailey also alleges that the Officers conspired to interfere with his civil rights in violation of 42 U.S.C. § 1983.  (ECF No. 1, PageID.8).  The Officers contend that they are entitled to summary judgment on this claim because Hailey "has provided no material facts that the [Officers] reached an agreement to deprive him of his civil rights."   (ECF No. 27, PageID.126).  The Court agrees with the Officers.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action."  *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).  To prevail on a civil conspiracy claim, a plaintiff must show (1) a "single plan" existed, (2) that the alleged co-conspirator "shared in the general conspiratorial objective," and (3) that "an overt act was committed in furtherance of the conspiracy."  *Bickerstaff v. Lucarelli,* 830 F.3d 368, 400 (6th Cir. 2016)).  "Although circumstantial evidence may prove a conspiracy, it is well-settled that conspiracy claims must be pled with some degree of specificity[.]"  *Id.*  "[V]ague and conclusory allegations unsupported by material facts will not be sufficient to state [a conspiracy] claim under § 1983."  *Id.*

In his complaint, Hailey contends that the Officers conspired to use excessive force and to fail to report accurate details regarding the arrest.  (ECF No. 1, PageID.8).  Hailey does not elaborate on the conspiracy claim in his response or in his cross-motion for summary judgment.  Hailey states only that he "demands [the Officers] [ ] prove that their actions were supported by law and that they didn't conspire" against him.  (ECF No. 29, PageID.143).  This is insufficient to survive summary judgment.

First, Hailey's demand that the Officers prove they did not conspire reveals a misunderstanding of the burden of proof.  The Officers, as the party moving for summary

judgment, have the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Officers met their summary judgment burden when they pointed to Hailey's failure to provide evidence of an agreement between the Officers. (ECF No. 27, PageID.126); Fed. R. Civ. P. 56(c)(1)(B) (a party may meet its summary judgment burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute"). Accordingly, it is Hailey who "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). Again, Hailey failed to do so, and his conclusory assertion that the Officers conspired with each other does not satisfy his summary judgment burden. *See Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011); *see also Bickerstaff*, 830 F.3d at 397 (finding plaintiff's statement that defendants "knowingly wrote and/or facilitated and/or processed and/or presented false statements against Plaintiff" conclusory and insufficient to withstand summary judgment.) Accordingly, the Officers' motion for summary judgment should be granted as to Hailey's civil conspiracy claim.

### iii.    *Monell* **Municipal Liability**

Hailey contends that the City of Detroit is liable for the Officers' constitutional violations under *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978). (ECF No. 1, PageID.10-11). However, "under [a] § 1983 ["Monell claim"], local governments are responsible only for their own illegal acts." *Connick v. Thomspon*, 563 U.S. 51, 60 (2011) (internal citation and quotation marks omitted). Thus, to prevail on a § 1983 claim against the City of Detroit, Hailey would have to show some sort of policy, practice, or custom that directly resulted in the violation of his constitutional rights. *See Monell*, 436 U.S. at 692. This is because municipal entities cannot be held liable under §1983 on a *respondeat superior* theory. *Id.* at 692.

Therefore, a municipality can be held liable under § 1983 if an employee's conduct occurs pursuant to a municipality's "official policy," such that the municipality's promulgation of the policy can be said to have caused its employee to violate the plaintiff's constitutional rights. *Monell*, 436 U.S. at 692.  To show the existence of a municipal policy or custom that caused an alleged violation, a plaintiff can identify: (1) the municipality's legislative enactments or official policies; (2) the ratification of illegal actions by an official with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance of acquiescence of federal violations.  *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).  Hailey has failed to properly allege a *Monell* claim under any of these theories.

1.    *Failure to Train*

The first basis for Hailey's *Monell* claim is that the City of Detroit failed to adequately train and/or supervise its police officers.  (ECF No. 1, PageID.10-11).  Inadequate training can be the basis for municipal liability if it "amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *Roell v. Hamilton Cty., Ohio/Hamilton Cty. Bd. of Cty. Commissioners*, 870 F.3d 471, 487 (6th Cir. 2017) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  To succeed on this claim, a plaintiff must prove: "(1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the [municipality's] deliberate indifference and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury." *Id.* (quoting *Brown*, 814 F.3d at 463).

Hailey argues generally that the City inadequately trained its officers on how to prevent violations of citizens' Constitutional rights.  (ECF No. 1, PageID.10-11).  Specifically, Hailey points to the City's alleged failure to train police regarding the use of excessive force and the proper basis for detaining citizens.  (*Id.*).  However, Hailey fails to allege facts regarding the second

element of the failure-to-train claim: that the training inadequacy is the result of the City's deliberate indifference. "'[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Jackson v. City of Cleveland*, 925 F.3d 793, 836 (6th Cir. 2019) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)).  A plaintiff may meet this standard by showing either (1) prior instances of unconstitutional conduct demonstrating that the City had notice that the training was deficient and likely to cause injury but ignored it, or (2) evidence of a single violation of federal rights, accompanied by a showing that the City had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation. *Id.*

Hailey fails to show deliberate indifference through either method.  All of Hailey's allegations relate to his own interaction with City of Detroit police officers.  Hailey does not point to any prior instances of unconstitutional conduct that would show the City had noticed deficient training.  (ECF Nos. 1, 29, 31).  "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."  *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).  Hailey presents no such proof here.

Hailey likewise fails to provide evidence that the City of Detroit's training of its officers is inadequate.  *Contra Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006) (finding Plaintiff's evidence – including expert testimony and deposition regarding officer training – raised genuine issue of material fact for failure-to-train claim).  As evidence of the Officers' training, Hailey points only to excerpts from the Detroit Police Department's manual.  (*See* ECF No. 29, PageID.137-38).  However, if anything, these excerpts establish that the City did train its officers.

(*See, e.g.,* ECF No. 29, PageID.6 ("Guidelines for information encounters… Do not risk without reasonable suspicion or consent… Do not detain the person if he/she refuses to operate and attempts to leave.")).  Accordingly, the City is entitled to summary judgment as to this claim.

### 2.      *Inaction*

The Court construes Hailey's second theory for the City's liability – that it failed to "supervise, review, and/or discipline officers [it] knew or should have known were [committing constitutional violations]" (ECF No. 1, PageID.10) – as an "inaction" claim.  In order to succeed on such a claim, Hailey would have to show (1) a clear and persistent pattern of unconstitutional conduct by the City's employees; (2) the City's notice or constructive notice of the unconstitutional conduct; (3) the City's tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction; and (4) that the policy of inaction was the moving force of the constitutional deprivation.  *See D'Ambrosio v. Marino*, 747 F.3d 378, 387-88 (6th Cir. 2014).  As discussed previously, all of Hailey's allegations are limited to his own interaction with the Officers.  (*See* ECF No. 29, PageID.139-142).  Hailey does not point to other instances of constitutional violations by City police officers.  The single incident involving Hailey and the Officers does not amount to a "persistent pattern of unconstitutional conduct." _*D'Ambrosio*, 747 F.3d at 388 (finding allegations regarding one prosecutor's behavior to be insufficient to show a pattern of unconstitutional conduct.); *Tuttle*, 471 U.S. at 823-24.  The City is therefore entitled to summary judgment on Hailey's *Monell* claim to the extent it is based on inaction.

### 3.   *Ratification*

Hailey next alleges that the City failed to "adequately supervise, review, and/or discipline police officers whom [the City] knew or should have known were violating … constitutional

rights."  (ECF No. 1, PageID.10).  The Court interprets these allegations as a *Monell* claim based on ratification.  The "ratification" theory of municipal liability applies only when the alleged ratification was carried out by an official with final decision-making authority.  *See D'Ambrosio*, 747 F.3d 386; *Burgess*, 735 F.3d at 478.  Hailey does not name or allude to a final decision-maker. Instead, Hailey alleges only that the City failed to discipline and/or review its officers.  (ECF No. 1, PageID.10-11).  This is insufficient to establish the requisite degree of ratification and culpability.  *See Brown*, 814 F.3d at 462.  Thus, the City is entitled to summary judgment as to Hailey's *Monell* claim based on the City's alleged failure to review and/or discipline officers.

### 4.  Unconstitutional Policy

Finally, Hailey appears to contend that the City should be liable on a *Monell* theory for failing to preserve and instead "destroying relevant and material evidence," i.e., the Officers' dash-cam video from the night in question.  (ECF No. 1, PageID.11).  Even liberally construing this claim in Hailey's civil case, the City is entitled to summary judgment.

"[C]riminal defendants must be afforded 'a meaningful opportunity to present a complete defense,'" as required under the Due Process Clause of the Fourteenth Amendment.  *United States v. Collins*, 799 F.3d 554, 569 (6th Cir. 2015) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)).  As such, the Court has developed what might loosely be called the area of constitutionality guaranteed access to evidence.  *Id.*  In the first instance, when the government fails to preserve exculpatory evidence, "[t]he destruction of material exculpatory evidence violates due process regardless of whether the government acted in bad faith."  *United States v. Wright*, 260 F.3d 568, 571 (6th Cir. 2001) (citing *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988)).  If, however, the value of the evidence destroyed is "indeterminate and only potentially useful," the defendant in a criminal case must prove:

> (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*United States v. Jobson*, 102 F.3d 214, 218 (6th Cir. 1996) (citing *Youngblood*, 488 U.S. at 57-58). "In order to establish bad faith, a defendant must prove official animus or a conscious effort to suppress exculpatory evidence."  *Collins*, 799 F.3d at 569 (quoting *Jobson*, 102 F.3d at 218) (internal quotation marks omitted).

Here, it is unclear whether the Officer's dash-cam captured any of the salient interactions, and thus the video would have been "indeterminate and only potentially useful" to Hailey in his criminal trial.  Accordingly, to the extent Hailey could even assert a claim based on the video's destruction, he would need to prove that the City acted in bad faith in destroying it.  But Hailey fails to raise a material question of fact as to that issue.

Hailey provided the Court with transcripts from his criminal case in which the officer-in-charge of the case testified as to how the scout car video in question was overwritten, even though the case was still pending, and even though Hailey and the state court had both requested the video. (ECF No. 31, PageID.243).  The officer-in-charge testified, "it's not that the Detroit Police destroy it.  It's just the system automatically gets rid of it [after 90 days if the video is not requested to be preserved]." *Id*.  Here, the only evidence before the Court is that the video was not deleted because of bad faith, but because the officer-in-charge "was on leave" when the preservation request was sent to her.  (*Id.*, PageId.243-44).  Hailey presented no contrary evidence whatsoever, and thus fails to satisfy the first prong of the *Youngblood* test.  Nor has Hailey shown that a municipality's policy of overwriting police cruiser video after 90 days if it has not been requested during the interim violates the Constitution.

For all of these reasons, the City is entitled to summary judgment as to Hailey's *Monell* claims against it.

### iv.    Federal Kidnapping

Finally, Hailey brings a claim for kidnapping under the federal criminal kidnapping statute, 18 U.S.C. § 1201.  (ECF No. 1, PageID.13).  That statute provides, "[w]hoever unlawfully seizes, confines…kidnaps…and holds for ransom or reward or otherwise any person…shall be punished by imprisonment…" 18 U.S.C. § 1201(a).  Defendants correctly argue that Hailey's kidnapping claim must be dismissed because 18 U.S.C. § 1201 is a criminal law that does not create a private cause of action.  (ECF No. 27, PageID.125).

Federal criminal statutes generally do not provide private rights of action.  *See Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979).  The Sixth Circuit has specifically held that 18 U.S.C. § 1201 does not provide a cause of action for private individuals.  *See Malloy v. Watchtower Bible and Tract Society*, No. 18-1041, 2019 WL 190344, at *1 (6th Cir. 2019).  As a result, Hailey does not have standing to bring a kidnapping claim under 18 U.S.C. § 1201.  The Officers' motion for summary judgment as to that claim should be granted.

### D.    Conclusion

For the foregoing reasons, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment (**ECF No. 27**) be **GRANTED IN PART AND DENIED IN PART**; specifically, summary judgment should be **GRANTED** as to Hailey's official capacity claims against the Officers, his illegal search claim against Officer Bush, his civil conspiracy claim, his *Monell* claims, and his kidnapping claim, but summary judgment should be **DENIED** as to Hailey's remaining Fourth Amendment claims against Officers Kue and Bush.  Moreover,

Hailey's Motion for Summary Judgment (**ECF No. 29**) should be **DENIED** in its entirety.[8]

Dated: December 13, 2019                    s/ David R. Grand
Ann Arbor, Michigan                         DAVID R. GRAND
                                            United States Magistrate Judge

<u>**NOTICE REGARDING OBJECTIONS**</u>

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(a) and (b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Order and Report and Recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  Any such response should be concise, and should address

---

[8] With respect to Hailey's motion, as the plaintiff in this case, he faces a "substantially higher hurdle" than do Defendants.  *See Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).  Indeed, "where the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. U.S.*, 799 F.2d 254, 259 (6th Cir. 1986) (internal citations omitted).  Accordingly, summary judgment in favor of the plaintiff "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Harris v. Kowalski*, No. 1:05-CV-722, 2006 WL 1313863, at *3 (W.D. Mich. May 12, 2006) (internal quotations omitted).  Here, for all of the reasons set forth above, the Court finds that numerous questions of fact exist as to Hailey's remaining claims; thus, summary judgment in his favor is inappropriate.

specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 13, 2019.

/s/ Eddrey O. Butts
EDDREY O. BUTTS
Case Manager